# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| NINA COOPER, AS REPRESENTATIVE OF BERTHA JOHNSON, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, DONNA LOFTON, AS SURVIVOR OF BARBARA LOFTON, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, CHARLENE LUNEAU, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, AND KARL PATRICK SR, AS REPRESENTATIVE OF LEESTHER PATRICK, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CIVIL ACTION NO.: 1:23-cv-1813 <br><br> JUDGE: <br><br> MAG. JUDGE: <br><br> **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| vs. | |
| ALEXANDRIA HEALTHCARE, LLC D/B/A "THE SUMMIT" AND PATHWAY MANAGEMENT OF LOUISIANA, LLC, | |
| Defendants. | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

**NOW COMES**, through undersigned counsel, the petitioners, Nina Cooper, a person of the full age of majority domiciled in the State Louisiana, as mandatary on behalf of her sister, Bertha Johnson, individually, and on behalf of all others similarly situated, Donna Lofton, a person of the full age of majority domiciled in the State Louisiana, as surviving child of Barbara Lofton, individually, and on behalf of all others similarly situated, Charlene Luneau, a person of the full age of majority domiciled in the State Louisiana, individually, and on behalf of all others similarly situated, and Karl Patrick, Sr., a person of the full age of majority domiciled in the State Louisiana,

as mandatary on behalf of his father, Leesther Patrick, individually, and on behalf of all others similarly situated (collectively, "Petitioners"), who respectfully represent as follows:

## PARTIES

1.      Plaintiff Class.

The class sought to be represented is defined as follows:

a.      Plaintiff Subclass One: "Private Pay Residents"

The first subclass sought to be represented in this action is defined as follows: all persons who resided in (or continue to reside in) the Louisiana skilled nursing facility Alexandria Healthcare, LLC d/b/a "The Summit," that is and was owned, operated, and/or managed by the defendants named herein from ten years prior to the filing of this action through the date of the final disposition of this action wherein the defendants were reimbursed for services provided to a "class member" by private pay and/or privately acquired insurance and/or any Health Maintenance Organization ("HMO") or Preferred Provider Organization ("PPO"). The subclass does not include: (a) any officers, directors or employees of the defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror selected to hear this case.

b.      Plaintiff Subclass Two: "All Residents"

The second subclass sought to be represented in this action is defined as follows: all persons who were resided in (or continue to reside in) the Louisiana skilled nursing facility The Summit, that is and was owned, operated, and/or managed by the defendants named herein at any time from ten years prior to the filing of this action through the date of the final disposition of this action. The class does not include: (a) any officers, directors or employees of the defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror

selected to hear this case. This subclass shall seek injunctive relief and attorneys' fees and costs only.

2. <u>Individual Plaintiffs/Class Representatives</u>. Bertha Johnson, at all times relevant hereto a citizen of the State of Louisiana, was a resident of the Defendants' skilled nursing facility operating under the fictitious business name The Summit who entered into a standard admission agreement with the Defendants. NINA COOPER, as mandatary on behalf of Bertha Johnson, brings this action on behalf of Bertha Johnson, individually, and on behalf of all others similarly situated. Barbara Lofton, at all times relevant hereto a citizen of the State of Louisiana, was a resident of the Defendants' skilled nursing facility operating under the fictitious business name The Summit who entered into a standard admission agreement with the Defendants. DONNA LOFTON, as surviving child of Barbara Lofton, brings this action on behalf of decedent Barbara Lofton, individually, and on behalf of all others similarly situated. CHARLENE LUNEAU, at all times relevant hereto a citizen of the State of Louisiana, was a resident of the Defendants' skilled nursing facility operating under the fictitious business name The Summit who entered into a standard admission agreement with the Defendants. Leesther Patrick, at all times relevant hereto a citizen of the State of Louisiana, was a resident of the Defendants' skilled nursing facility operating under the fictitious business name The Summit who entered into a standard admission agreement with the Defendants. KARL PATRICK SR., as mandatary on behalf of Leesther Patrick, brings this action on behalf of Leesther Patrick, individually, and on behalf of all others similarly situated.

3. <u>Defendants</u>. Defendant ALEXANDRIA HEALTHCARE, LLC d/b/a "The Summit," upon information and belief, is a limited liability company doing business as a skilled nursing facility under the fictitious business name The Summit which at all times pertinent herein

was physically located and doing business at 2200 Memorial Drive, Alexandria, Louisiana 71301 (sometimes hereinafter, the "FACILITY"), authorized to do and doing business in Parish of Rapides, State of Louisiana, with all duties and responsibilities thereto. Upon information and belief, Defendant ALEXANDRIA HEALTHCARE, LLC is and was at all times relevant hereto a citizen of the State of Mississippi in that its sole member, Medico, LLC, is and was at all relevant times hereto is a citizen of the State of Mississippi.

4.      In turn, upon information and belief, the only members of Medico, LLC are and were at all times relevant hereto Elton Glynn Beebe, Jr; Providence Care, LLC; The QSST Trust for Felicia Beebe Stallard and Her Descendants; and The QSST Trust for Alison Beebe Sadler Danos and Her Descendants, each of which/whom, upon information and belief, is and was at all times relevant hereto a citizen of the State of Mississippi.

5.      In turn, the only member of Providence Care, LLC is David Stallard, who, upon information and belief, is and was at all times relevant hereto a citizen of the State of Mississippi.

6.      Defendant PATHWAY MANAGEMENT OF LOUISIANA, LLC, upon information and belief, is a limited liability company authorized to do and doing business in the Parish of Rapides, State of Louisiana, with all duties and responsibilities thereto, and which at all times pertinent herein was the non-health care provider "Manager" of the FACILITY under contract, with all duties and responsibilities thereto (all defendants collectively hereinafter, "DEFENDANTS"). Upon information and belief, Defendant PATHWAY MANAGEMENT OF LOUISIANA, LLC is and was at all times relevant hereto a citizen of the State of Mississippi in that each of its members is and was at all times relevant hereto as citizen of the State of Mississippi. Specifically, the only member of PATHWAY MANAGEMENT OF LOUISIANA, LLC is and was at all times relevant hereto Pathway Management, Inc., which, upon information and belief,

is and was at all times relevant hereto a citizen of Mississippi in that it is incorporated in and maintains its principal office in the State of Mississippi.

## CLASS ACTION ALLEGATIONS

7.     <u>Ascertainable Class</u>. The proposed class is ascertainable. The litigation of the questions of fact and law involved in this action will resolve the rights of all members of the class and hence will have binding effect on all class members. These class members can be readily identified from residency computer files of the defendants and other means readily available to the defendants, and thus the plaintiffs, through minimally intrusive discovery. The class is numerous. On information and belief, those class members number more than three thousand (3000). Joinder of all class members is impracticable due to both a reluctance of class members to sue their current caregivers and the relatively small monetary recovery for each class member in comparison to the costs associated with separate litigation.

8.     <u>Community of Interest</u>. The proposed class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Petitioners each has claims typical of the class members. Without limitation, DEFENDANTS, or those acting on their behalf, underfunded the FACILITY and provided insufficient nursing service personnel to residents Bertha Johnson, Barbara Lofton, Charlene Luneau and Leesther Patrick (collectively hereinafter, "Plaintiffs"), and others similarly situated. Accordingly, the claims of all potential class members are based upon the same legal theories, they arose from the same actions, and occurred over the same period of time. The named Petitioners can fairly and adequately represent and protect the interests of the class in that there are no conflicts between Petitioners' interest and the interests of other class members, this action is not collusive,

the named Petitioners and Petitioners' counsel have the necessary resources to litigate this action, and counsel has the experience and ability required to prosecute this case as a class action.

9.      <u>Superiority of Class Adjudication</u>. The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue their current nursing home provider and/or their inability to afford a separate action. Finally, equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received.

## **FACTUAL ALLEGATIONS**

10.     DEFENDANTS are jointly and *in solido* liable and indebted unto Petitioners, individually, and on behalf of all others similarly situated, for such damages as are reasonable in the premises, including an award of attorney fees pursuant to Louisiana Civil Code article 1958, together with legal interest thereon from the date of judicial demand until paid, for all costs of this proceeding, plus injunctive relief, and for all other general and equitable relief to which Petitioners, individually, and on behalf of all others similarly situated, are entitled by law, for the following reasons, to-wit:

11.     Upon information and belief, from at least in or near January 2014 to the present, DEFENDANTS owned and operated the FACILITY, which is a skilled nursing facility located in Alexandria, Louisiana, and were legally responsible for the Plaintiffs and numerous other similarly situated skilled nursing facility residents.  Plaintiffs resided in the FACILITY for a known period of time that included within the last twelve months prior to the filing of this action.

12.     This action is brought pursuant to Louisiana Civil Code articles 2315, *et seq*. and 1953 and Louisiana Code of Civil Procedure article 3601, *et seq*.

13.     In owning, operating, managing, administrating, controlling, and/or supervising the FACILITY, DEFENDANTS were required to comply with Louisiana statutory and regulatory law governing the operation of skilled nursing facilities. In owning, operating, managing, administrating, controlling, and/or supervising the FACILITY, DEFENDANTS were also subject to the authority of licensing and other governmental agencies, including but not limited to the Louisiana Department of Health and the federal Centers for Medicare & Medicaid Services ("CMS").

14.     Pursuant to La. R.S. 40:2010.8(C), each Louisiana skilled nursing facility, including the FACILITY operated by DEFENDANTS herein, "[s]hall provide a copy of the statement required by Subsection A of this Section to each resident and sponsor upon or before the resident's admission to the home and to each staff member of the home." This statement under Subsection A provides that "[a]ll skilled nursing facilities shall adopt and make public a statement of the rights and responsibilities of the residents residing therein and shall treat such residents in accordance with the provisions of the statement. The statement shall assure each resident the following: […] (7) The right to receive adequate and appropriate health care and protective and support services, including services consistent with the resident care plan, with established and recognized practice standards within the community, and with rules promulgated by the Louisiana Department of Health." La. R.S. 40:2010.8(A).

15.     Part and parcel of these promised rights under La. R.S. 40:2010.8(A)(7) is the requirement to ensure the presence of sufficient "nursing service personnel" ("nursing service personnel" as utilized herein consist of registered nurses, licensed practical nurses, medication

attendants certified, and certified nurse aides" as defined in La. Admin Code. tit. 48, Pt I, § 9823) to provide nursing and related services that meet the needs of each resident. *See* La. Admin Code. tit. 48 §§ I-9821(A) and I-9823(A) and 42 CFR § 483.35). This action is based upon the failure of the DEFENDANTS to respect and adhere to Plaintiffs', and other similarly situated residents,' rights set forth in La. R.S. 40:2010.8(A)(7) by failing to have sufficient "nursing service personnel" to meet the needs of residents of the facility.

16.     It is alleged that, pursuant to La. R.S. 40:2010.8(C), upon or before Plaintiffs' respective admissions to the FACILITY (Bertha Johnson in or near October 2019, Barbara Lofton in or near May 12, 2023, Charlene Luneau in or near March 2016 and in or near January 2023, and Leesther Patrick in or near November 2019), and upon or before other similarly situated residents' admission to the FACILITY, the DEFENDANTS provided to Plaintiffs and their sponsors, and to others similarly situated, a copy of the statement required by La. R.S. 40:2010.8(A), which provides: "All skilled nursing facilities shall adopt and make public a statement of the rights and responsibilities of the residents residing therein and shall treat such residents in accordance with the provisions of the statement. The statement shall assure each resident the following: [...] (7) The right to receive adequate and appropriate health care and protective and support services, including services consistent with the resident care plan, with established and recognized practice standards within the community, and with rules promulgated by the Louisiana Department of Health."

17.     Pursuant to this uniform written representation that the services provided by the DEFENDANTS would meet the particularized standards as set forth in the Residents' Bill of Rights statement provided to Plaintiffs, and other similarly situated, upon or before their admission to the FACILITY, the DEFENDANTS were to provide all residents of the FACILITY services

consistent with the mandatory requirements of La. R.S. 40:2010.8(A)(7), most specifically the right to live in a facility that employs "sufficient nursing staff to provide nursing . . . that meet the needs of each resident" as mandated by law, including, without limitation, La. Admin Code. tit. 48 §§ I-9821(A) and I-9823(A) and 42 CFR § 483.35 and as per this Complaint, specifically sufficient "nursing service personnel" which is the sole focus of this action, and DEFENDANTS affirmatively represented to Plaintiffs, and others similarly situated, that they would provide such services. These uniform representations of the DEFENDANTS in the admission process as to the nature of their services to be provided were false and actually known to be false when made by the DEFENDANTS.

18.    During the admissions process and prior to becoming residents of the FACILITY, representatives of the FACILITY presented to each of the Plaintiffs and each class member, and/or each's legal representative, a copy of the Residents' Bill of Rights as mandated by La. R.S. 40:2010.8(C).  Plaintiffs, and each member of the class, and/or each's legal representative, read and understood the Residents' Bill of Rights and relied upon the DEFENDANTS' representations as to their promised compliance therewith, in deciding to become and/or remain residents of the FACILITY, and signed an admission agreement and became and/or remained residents of the FACILITY.  Each and every putative class member, and most specifically the named Plaintiffs, and/or their legal representatives acting on their behalf, justifiably relied on these false written representations in agreeing to the terms and obligations of the admission agreement to their detriment and as more fully set forth below.

19.    Before, during, and after the admissions processes of Plaintiffs and each class member, the DEFENDANTS actively and intentionally concealed from Plaintiffs and class members that at all times relevant hereto the FACILITY did not employ, and knew they did not

employ, sufficient "nursing service personnel" to meet the needs of facility residents as mandated by law.

20.     Before, during, and after the admissions processes of Plaintiffs and each class member, the DEFENDANTS knew that they did not have sufficient "nursing service personnel" to provide required care for the incoming and existing residents and actively concealed this known fact from the Plaintiffs and others similarly situated.

21.     It is alleged that the concealments by DEFENDANTS alleged in the immediately preceding paragraph were intended to deceive Plaintiffs and members of the class into believing that the FACILITY was properly operated to induce Plaintiffs and class members into becoming and/or remaining residents of the FACILITY.  Plaintiffs and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, were unsophisticated and unknowledgeable in the operation of skilled nursing facilities in the State of Louisiana and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status.  Had the concealed facts been disclosed to Plaintiffs and members of the class, they would not have become and/or remained residents of the FACILITY and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing services at the FACILITY in the form of an insufficiency of "nursing service personnel"  to meet the needs of FACILITY residents.

22.     At the time DEFENDANTS made these affirmative representations to Plaintiffs (Bertha Johnson in or near October 2019, Barbara Lofton in or near May 12, 2023, Charlene Luneau in or near March 2016 and in or near January 2023, and Leesther Patrick in or near November 2019), and to others similarly situated upon or before their respective admissions, that

they would be treated in accordance with the provisions of La. R.S. 40:2010.8(A)(7) as a resident of the FACILITY, DEFENDANTS knew their representations were false and made the representations without any intention to perform at the time they were made, based on DEFENDANTS' knowledge existing at that time that the FACILITY was, in fact, understaffed as detailed herein, and with the intent that Plaintiffs, and others similarly situated, would rely upon the misrepresentations in becoming a resident of the facility.

23.     Plaintiffs, and others similarly situated, justifiably relied upon DEFENDANTS' such fraudulent misrepresentations in entering into an admission agreement with the DEFENDANTS and becoming a resident of the facility, with Bertha Johnson's admission period commencing in or near October 2019, Barbara Lofton's admission period commencing in or near May 12, 2023, Charlene Luneau's admission period commencing in or near March 2016 and in or near January 2023, and Leesther Patrick's admission period commencing in or near November 2019).

24.     It is alleged that this concealment by DEFENDANTS was intended to deceive Plaintiffs and members of the class and/or each's legal representatives into believing that the FACILITY was properly operated with sufficient nursing service personnel to induce Plaintiffs and class members into becoming and/or remaining residents of the FACILITY. Plaintiffs and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, and/or each's legal representatives, were unknowledgeable and unsophisticated in the operation of skilled nursing facilities in the State of Louisiana and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status.

25.     Before, during, and after the admissions processes of Plaintiffs and each class member, the DEFENDANTS actively and intentionally concealed from Plaintiffs and class members that DEFENDANTS chronically understaffed the FACILITY as to "nursing service personnel" with an inadequate number of "nursing service personnel" to carry out the functions of the FACILITY as more fully alleged herein, and in so doing and as a result thereof, the DEFENDANTS have violated the rights afforded to all residents of skilled nursing facilities under La. R.S. 40:2010.8(A)(7) and applicable federal and state regulations, most specifically the right to live in a facility that employs a sufficient number of "nursing service personnel" to meet the needs of residents.  It is alleged that this concealment by DEFENDANTS was intended to deceive Plaintiffs and members of the class into believing that the FACILITY was properly staffed to induce Plaintiffs and class members into becoming and/or remaining residents of the FACILITY. Plaintiffs and members of the class, all in infirm health, elderly, and/or in need of skilled nursing care and members of one of the most vulnerable segments of our society, were unknowledgeable and unsophisticated in the operation of skilled nursing facilities in the State of Louisiana and had no knowledge of the facts concealed by DEFENDANTS and could not have discovered those concealed facts due to, among other things, their extremely vulnerable status. Had the concealed facts been disclosed to Plaintiffs and members of the class, they would not have become and/or remained residents of the FACILITY and would not have paid, or had monies paid on their behalf, for the substandard skilled nursing services at the FACILITY.

26.     In reality, in direct contradiction to their uniform written representations that the FACILITY would adhere to Plaintiffs' and other class members' rights under La. R.S. 40:2010.8(A)(7) to employ a sufficient number of  "nursing service personnel" to meet the needs of their residents, DEFENDANTS knowingly and chronically understaffed the FACILITY as to

"nursing service personnel," as is more fully alleged herein below. Thus, DEFENDANTS have misrepresented in providing the statement of rights required under La. R.S. 40:2010.8(A) to Plaintiffs and others similarly situated that entering into an admission agreement with DEFENDANTS conferred or involved rights, remedies, or obligations which the transaction did not have or involve, or which DEFENDANTS did not intend to provide.

27.    Plaintiffs and the class members, as persons unknowledgeable and unsophisticated in the operation of skilled nursing facilities in the State of Louisiana and having no knowledge of the material concealments by DEFENDANTS alleged herein, justifiably relied on the representations by the DEFENDANTS as to their promised compliance with La. R.S. 40:2010.8(A)(7) in entering into an admission agreement and becoming and/or remaining residents of the FACILITY thereby assuming the obligation of payment to the DEFENDANTS. In requiring their residents to specifically and separately acknowledge receipt of DEFENDANTS' representations regarding the Residents' Bill of Rights, DEFENDANTS knew, or should have known, that their residents were reasonably and justifiably relying on said representations.

28.    It is alleged that Plaintiffs, and others similarly situated, suffered injury in fact and concrete harm in that they relied on the representations of the DEFENDANTS that they would be provided with minimum standards of care consistent with the requirements of La. R.S. 40:2010.8(A)(7), most specifically the right to live in a facility that employs "sufficient nursing staff to provide nursing . . . that meet the needs of each resident" as mandated by law, including, without limitation, La. Admin Code. tit. 48 §§ I-9821(A) and I-9823(A) and 42 CFR § 483.35, yet did not receive this promised standard of care and suffered pecuniary harm by being deprived of the value of payments made for skilled nursing services when these services were not actually rendered consistent with the DEFENDANTS' representations.

29.    In addition, Plaintiffs, and others similarly situated, made monetary payments or had monetary payments made on their behalf to the DEFENDANTS in return for skilled nursing services of the level promised by the DEFENDANTS in the statement required by La. R.S. 40:2010.8(A) provided to Plaintiffs, and others similarly situated, upon or before their admission to the FACILITY.  The class has suffered actual and pecuniary harm in that the DEFENDANTS did not provide such services of the level represented and Plaintiffs and the class would not have become or remained residents of the FACILITY had they known that the FACILITY was not adequately staffed and/or would have paid less for services at the FACILITY had they known that the FACILITY was not adequately staffed.  In addition, Plaintiffs, and others similarly situated, have suffered actual and pecuniary harm in that DEFENDANTS misrepresented that entering into an admission agreement with DEFENDANTS conferred the statutory resident right under La. R.S. 40:2010.8(A)(7) of Plaintiffs, and others similarly situated, to reside in a facility that employs a sufficient number of nursing staff to provide nursing and related services that meet the needs of each resident when, in fact, the transaction of entering into an admission agreement with DEFENDANTS did not confer such right.

30.    That is, simply by entering into an admission agreement with a resident, the DEFENDANTS represent in writing through provision of the statement required by La. R.S. 40:2010.8(A), which, upon information and belief, is included as an exhibit or addendum to the admission agreement of Plaintiffs, and all others similarly situated, that the transaction conferred the statutory resident rights afforded to all residents of skilled nursing facilities under La. R.S. 40:2010.8(A)(7), including services consistent with federal and state regulations which require nursing facilities to provide a sufficient number of nursing staff to meet the needs of residents, when, in fact, the transaction of entering into an admission agreement with DEFENDANTS did

not confer such right.

31.    The representations of DEFENDANTS as incorporated into their admissions contracts are, and were, false and known by the DEFENDANTS to be false when made.  Plaintiffs and the class relied on these misrepresentations in becoming and/or remaining residents of the FACILITY.  In reliance of these misrepresentations, Plaintiffs and the class made payments to the DEFENDANTS or had payments made on their behalf in return for these services as promised. Plaintiffs and the class suffered pecuniary harm in the form of lost payments and lost services when the DEFENDANTS actually failed to provide these promised skilled nursing services as represented.  Plaintiffs and the class also suffered harm in that Plaintiffs and the class would not have become or remained residents of the FACILITY had they known that the FACILITY was not adequately staffed with "nursing service personnel" and/or would have paid less for services at the FACILITY had they known that the FACILITY was not adequately staffed with "nursing service personnel."

32.    It is alleged that federal and state regulations require skilled nursing facilities to provide adequate, qualified staffing to meet resident needs and to carry out all functions at the facility, regardless of whether adequate staffing would require more staff than any required bare numeric ratios require.  Specifically, as it relates to federal law, 42 CFR § 483.35 states that a skilled nursing facility "[m]ust have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care and considering the number, acuity and diagnoses of the facility's resident population in accordance with the facility assessment required at § 483.70(e)."

33.    It is specifically alleged that the regulations enacted pursuant to La. Admin Code. tit. 48 §§ I-9821(A) and I-9823(A), also require that a skilled nursing facility maintain staffing at levels sufficient to meet the needs of residents, even if that required staffing level is more than the bare minimum numeric ratio of 2.35 hours of care per patient per day required by La. Admin Code. tit. 48 § I-9823(A)(1).  The staffing requirements required by this section are minimum standards only and do not equate to the provision of "sufficient" nursing staff as contemplated and required by relevant state and federal staffing requirements. *See Broden v. Riverlands Home Grp., L.L.C.*, No. 22-1573, 2022 WL 2315019, at *1 (E.D. La. June 28, 2022); *Cole v. St. Joseph of Harahan, LLC*, No. CV 22-1540, 2022 WL 2687836, at *4 (E.D. La. July 12, 2022).

34.    It is alleged that minimum staffing of "nursing service personnel" in the FACILITY is dependent by law upon the acuity (need) level of the residents of the FACILITY.  As alleged more fully below, the FACILITY'S resident acuity levels during the class period were so high such that the "minimum" staffing ratios exceeded the numeric minimum of La. Admin Code. tit. 48 § I-9823(A)(1) pursuant to the provisions of La. Admin Code. tit. 48 §§ I-9821(A) and  I-9823(A) and 42 CFR §483.35.

35.    Thus, it is specifically alleged that DEFENDANTS, as operators of skilled nursing facilities must, pursuant to statutes and regulations with which DEFENDANTS are required to comply, know that sufficient nursing staff is required to meet the needs of residents and to ensure the health and safety of residents.  Conversely, DEFENDANTS, as operators of skilled nursing facilities must also know that a failure to maintain sufficient staffing of "nursing service personnel" to meet the needs of residents will endanger the health and safety of residents of the FACILITY. The DEFENDANTS, as operators of skilled nursing facilities, cannot claim ignorance of these regulatory requirements without endangering their very licensure. *See* La. Admin. Code. tit. 48 §

I-9703(C) ("A nursing facility shall be in compliance with all required federal, state and local statutes, laws, ordinances, rules, regulations and fees.").

36.     Thus, it is alleged that at all times relevant hereto, the DEFENDANTS were required to know pursuant to applicable statues and regulations (or risk forfeiture of licensure) that understaffing the FACILITY creates a high risk of harm to residents of that facility.  That at all times relevant hereto the DEFENDANTS consciously disregarded that knowledge and continued to maintain insufficient staffing levels.

37.     The methodology of determination of the DEFENDANTS' violations and knowledge regarding the intentional/fraudulent concealment and misrepresentation, is easily obtainable and provable on a facility-wide, not resident-specific basis, and includes, without limitation, the following:

A. The DEFENDANTS' Medicare & Medicaid annual cost reports submitted under penalty of perjury and at the risk of criminal prosecution for inaccuracy, establishes what was spent on a facility wide basis.

B. The first step in the analysis is to determine the collective resident acuity and care needs using resident assessment data and overall resident care plans. Data are available from (1) facility assessments of the staffing resources needed to provide care; (2) data from aggregate Minimum Data Set ("MDS" resident assessments); (3) Resource Utilization Group ("RUG") scores and HIPPS billing codes; (4) Centers for Medicare & Medicaid Services ("CMS") Form 672 summary of resident needs and costs reports; (5) resident ADL summaries; and (6) the new Patient-Driven Payment Model ("PDPM") scores.

C. The second step is to determine the actual staffing levels for Registered Nurses ("RN"), Licensed Practical Nurses ("LPN"), and Certified Nurse Aides ("CNA"). This step involves analyzing data from facility internal staffing reports and payroll data, payroll-based journal ("PBJ") data that facilities submit to CMS (since 2017 to replace CMS Form 671 data), and Medicare and Medicaid cost report data and/or time cards.

D. The third step is to determine appropriate nurse staffing levels based on resident acuity. Sources of information include (1) research studies, expert opinions, and professional recommendations on the minimum staffing levels; (2) CMS 1995 to 1997 staff time measurement ("STM") study; and (3) new research to calculate minimum CNA Staffing.

F. The fourth step is to compare the actual facility staffing to the appropriate

nursing staffing levels based on acuity for each facility to identify gaps. The goal of the guide is to assist directors of nursing and administrators in nursing homes to ensure adequate nursing home staffing levels to protect resident health, safety and well-being.

38.    The staffing analysis described above is done at a facility-level. Thus, it does not require any individualized inquiry into how many hours of direct nursing care any specific resident received on any given day. Rather, the proper analysis is whether the *facility as a whole* employed an adequate number of qualified staff to competently care for the collective needs of its residents. It is specifically alleged that CMS has already developed a methodology for determining the level of staffing required to meet the needs of residents based on the collective acuity levels of the residents via the CMS Agency Patient-Related Characteristics Report (formerly the Case Mix Report), which is the average resident need score based on resident assessment data that CMS *has already collected and calculated*. A self-authenticating link to a portion of this staffing information is at: https://data.cms.gov/provider-data/archived-data/nursing-homes.

39.    It is specifically alleged that if a skilled nursing facility's staffing levels are lower than the level of staffing of "nursing service personnel" required to meet the needs of residents as determined by their collective acuity, that facility has violated its residents' statutory, affirmative and actionable right to reside in a skilled nursing facility that employs a sufficient number of nursing service personnel to meet the needs of each resident. Upon information and belief, it is alleged that the FACILITY was inadequately staffed as to "nursing service personnel" in violation of La. R.S. 40:2010.8(A)(7) and applicable federal and state regulation, including La. Admin Code. tit. 48 §§ I-9821(A) and  I-9823(A) and 42 CFR § 483.35.

40.    As the result of the DEFENDANTS' knowing, false misrepresentations, made without any intention of performance when made, but with the intent that Plaintiffs, and others similarly situated would rely upon them, and which were in fact justifiably relied upon Plaintiffs,

and other similarly situated residents, the DEFENDANTS defrauded Plaintiffs, and others similarly situated, by providing them with fewer total nurse staffing hours per patient per day as to "nursing service personnel," than what was promised and required to meet the acuity needs of the FACILITY'S resident population during the class period, and for which Plaintiffs, and others similarly situated, paid monies to DEFENDANTS to receive, resulting in personal pecuniary harm to Plaintiffs, and others similarly situated, the full extent of which is not yet known, by being deprived of the value of payments made for skilled nursing services when these services were not actually rendered consistent with the DEFENDANTS' representations.

41.    The DEFENDANTS' deliberate fraudulent actions detailed herein were in violation of Louisiana law, to include Louisiana Civil Code articles 2315 and 1953.

42.    As a result of DEFENDANTS' fraudulent conduct detailed herein, Plaintiffs, and others similarly situated, suffered damage, the full extent of which is not yet known, and the quantum of which is an issue for the fact-finder to decide. *Maw Enterprises, LLC v. City of Marksville*, 2014-0090 (La. 9/3/14), 149 So. 3d 210, 215.

43.    As a result of the DEFENDANTS' fraudulent actions as set forth above, the DEFENDANTS are liable to Petitioners, individually, and on behalf of all others similarly situated, for all damages resulting therefrom, to include attorney fees under Louisiana Civil Code article 1958.

44.    Collectively, DEFENDANTS admitted, housed, and were legally responsible for more than 100 similarly situated skilled nursing facility residents, including Plaintiffs.

45.    Collectively, and as directly managed and overseen by PATHWAY MANAGEMENT OF LOUISIANA, LLC, the DEFENDANTS siphoned funds and assets away from the direct caregivers at the FACILITY under the guise of management and administrative fee

expenses which were "related-party transactions" (*i.e.*, "less than arms' length") as reported in the Medicare cost report submitted, under penalty of perjury, to the Louisiana Department of Health for the reporting period. Through such budgetary constraints, the DEFENDANTS systematically failed to have the resources or the staff on hand to manage the care of residents to include Plaintiffs and others similarly situated.

46.    Under Louisiana Civil Code articles 2315, *et seq*. and 1953, Petitioners, individually, and on behalf of all others similarly situated, are entitled to recover the damages residents, including Plaintiffs and others similarly situated, sustained as a result of DEFENDANTS' fault to include the intentional misconduct alleged herein. *See Peters v. Allen Parish Sch. Bd.*, 2008-0323 (La. App. 3d Cir. 11/05/08), 996 So. 2d 1230, 1233-34.

47.    DEFENDANTS' actions affected more than 100 individuals similarly situated, in that DEFENDANTS misrepresented to residents, including Plaintiffs and others similarly situated, that they would adhere to their right under La. R.S. 40:2010.8(A)(7), yet, contrary to said false representations, DEFENDANTS breached statutory duties owed to Plaintiffs and others similarly situated under applicable state and federal statutory requirements, including, without limitation, the requirements found in La. Admin Code. tit. 48 §§ I-9701, *et seq*., I-9821 and I-9823 and 42 CFR § 483.35, *et seq*., and, in so doing violated Plaintiffs', and similarly situated other individuals', right assured under La. R.S. 40:2010.8(A)(7). Accordingly, DEFENDANTS are obligated to Petitioners, individually, and on behalf of all others similarly situated, for special damages and general damages provided under Louisiana law.

48.    As a result of the DEFENDANTS' fraudulent actions as set forth above, the DEFENDANTS are liable to Petitioners, individually, and on behalf of all others similarly situated, for all damages resulting therefrom, to include attorney fees under Louisiana Civil Code article

1958.

49.    Additionally, under Louisiana law, the DEFENDANTS had a legal duty to supply correct information and/or to not supply incorrect information; the DEFENDANTS breached that duty, and residents, including Plaintiffs, and others similarly situated, suffered resulting damage. *See*, *e.g.*, *Granger v. Christus Health Central La.*, 2012-1892 (La. 6/28/13), 144 So. 3d 736; *Fechtner v. Bice*, 2006-2077 (La. App. 1 Cir. 6/8/07), 964 So. 2d 1055; *Hopkins v. Coco*, 2014-1191 (La. App. 4 Cir. 7/29/15), 174 So. 2d 201.

50.    As alleged above, DEFENDANTS violated the statutory rights maintained by residents, including Plaintiffs and others similarly situated, and intentionally misrepresented that DEFENDANTS would meet those statutory obligations.

51.    Plaintiffs further seek an injunction against the DEFENDANTS pursuant to Louisiana Code of Civil Procedure article 3601 requiring that the FACILITY maintain a sufficient number of "nursing service personnel" hours PPD in compliance with applicable federal and state regulations set forth herein.

52.    Petitioners respectfully demand a trial by jury in the captioned action.

**WHEREFORE**, Petitioners, individually, and on behalf of all others similarly situated, respectfully pray that this Class Action Complaint be deemed good and sufficient, that DEFENDANTS named herein be served with a copy of this complaint and be duly cited to appear and timely answer, for a Court order certifying that the action may be maintained as a class and/or representative action, and that, after all legal delays and due proceedings be had before a trial by jury, there be judgment herein in favor of Petitioners, individually, and on behalf of all others similarly situated, against DEFENDANTS for damages in an amount reasonable under the premises, including but not limited to the diminution of the value between the nursing services

promised by DEFENDANTS and those actually rendered to Plaintiffs and others similarly situated, together with legal interest thereon from the date of judicial demand until paid, for all costs of this proceeding, an award of attorney fees pursuant to Louisiana Civil Code article and 1958, and for all other general and equitable relief to which Petitioners, individually, and on behalf of all others similarly situated, is entitled by law.

Petitioners additionally pray for the injunctive relief sought as follows:

1.    For an Order under La. C.C.P. art. 3601, for an injunction, requiring that:

    a.    the FACILITY, or its successors, shall maintain actual total nurse staffing hours of 2.75 per patient/resident per day;

    b.    the DEFENDANTS report to Louisiana Department of Health ("LDH") of all incidents of actual or suspected abuse or neglect (as defined by law) of which it has learned in the last three (3) years at the FACILITY, or its successors, which were not reported to LDH, Adult Protective Services and/or Law Enforcement;

    c.    the DEFENDANTS provide proof to the Court of compliance with the reporting requirements over the last three (3) years for any and all such incidents in the form of a copy of the report submitted to LDH;

    d.    the FACILITY, or its successors, conduct quarterly, confidential surveys of *all* residents and residents' representatives inquiring whether any conduct which may be deemed suspected abuse and/or neglect, and/or a violation of residents' rights has occurred (with a clear, court approved definition of these terms included, with examples), and requiring that the responses to these surveys be turned over to the Long-Term Care Ombudsman assigned

to the pertinent facility for review. Further, after providing confidential surveys in unredacted form to the Ombudsman, the FACILITY shall than redact only the name of the individual residents who completed the survey (or on whose behalf the survey was completed) from the surveys, and maintain copies of those surveys for a period of five (5) years, and that the surveys be made available (with names redacted) to any prospective resident, or their representative, any current resident, or their representative, or any past resident, or their representative, within 24 hours of a request;

e.    the FACILITY, or its successors, notify all current residents of this injunction by providing a copy of the injunction to them and their power of attorney/responsible party and/or personal representative, if any;

f.    the FACILITY, notify all future residents (at the time the admission agreement is signed) by providing a copy of this injunction during the period for which this injunction is in force to any new resident and to his or her power of attorney/responsible party and/or personal representative, if any;

g.    this injunction shall remain in full force and effect until the earlier of either of the following; (1) 10 years from the date of entry of judgment, or (2) five (5) years if no other violations of the injunction have been found by this or any other Court of competent jurisdiction regarding the FACILITY. The burden of proof to obtain the shorter period shall be on the DEFENDANTS;

h.    This injunction shall be enforced by the Court upon motion of any interested party (*i.e.*, Plaintiffs or any other current or former resident (and/or their

power of attorney/responsible party and/or personal representative, if any, or any employee of the FACILITY) and/or the filing of a new action of any such interested party. Each separately identifiable violation of this injunction shall be punishable by a $5,000 fine payable to the person filing the motion or bringing the action and a payment of all reasonable attorney's fees and costs incurred by the person bringing the motion or action against the FACILITY for violation of the injunction. A separate, identifiable violation includes for example, each giving of a dose of medication that is not prescribed is a separate violation that each resident may demand, separately;

i.     the FACILITY, or its successors, shall draft a policy and procedure to the satisfaction of the Court covering the handling of suspected abuse and neglect reporting as well as the obligation to asses and document patients' needs *immediately* upon arrival and when an emergency occurs; and on staffing; and

j.     the FACILITY, or its successors shall prepare a training program to the satisfaction of the Court to train its staff on the new policies and procedures; and shall submit verification, under oath, of compliance with that training program by all employees of each of the FACILITY within 12 months, and then repeated annually during the term of this judgment.

[*Signature block next page*]

Respectfully submitted,

**GARCIA & ARTIGLIERE**

_____
MATTHEW M. COMAN #23613
JORDAN M. JEANSONNE #33203
GARCIA & ARTIGLIERE
400 Poydras Tower
400 Poydras Street, Suite 2045
New Orleans, Louisiana 70130
Telephone: (504) 354-9750
edocs@lawgarcia.com

*Counsel for Petitioners, individually, and on behalf of all others similarly situated*

**PLEASE SERVE**:

Alexandria Healthcare, LLC,
*through its registered agent for service of process:*
C T Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

Pathway Management of Louisiana, LLC,
*through its registered agent for service of process:*
C T Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816